UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
JOSEPH F. DeSANTIS,                                      :
    *Plaintiff*,                                              :
                                                                     :   **05 CV 10868 (DC)**
V.                                                                    :   **ECF CASE**
                                                                     :
DEUTSCHE BANK TRUST COMPANY      :   **COMPLAINT**
AMERICAS, INC., DEUTSCHE BANK         :
AMERICAS HOLDING CORP., and             :
DEUTSCHE BANK AG NEW YORK,           :
    *Defendants.*                                          :
------------------------------------------------------------ x

    Plaintiff Joseph F. DeSantis, by his lawyer Daniel P. Levitt, as and for his complaint against the defendants, alleges as follows:

### Summary

    1. This is an action to challenge the settlement agreement and accompanying severance package proposed by defendants in connection with plaintiff's termination, effective January 28, 2005, as Managing Director of Equities, Americas, for defendant Deutsche Bank Trust Company Americas, Inc., doing business under the marketing name Deutsche Asset Management. His termination followed a corporate restructuring which eliminated his position. Wholly apart from his rights to properly determined severance pay, plaintiff also challenges defendants' failure to pay him the 2004 incentive compensation or bonus and other compensation which he earned during calendar 2004 and to which he is entitled as a matter of implied contract and quantum meruit; Deutsche Bank Group companies distributed annual bonuses for 2004 to their employees who – like

2

plaintiff – worked all of calendar 2004 in early February 2005 – just days after plaintiff completed work.

2. Rather than pay plaintiff the full incentive compensation or bonus plaintiff had earned by working all twelve months of 2004, defendants proposed a settlement and severance package which relied on an inapplicable provision of their Severance Plan. That provision was the "75%-50%" formula designed and intended to limit employees who – unlike plaintiff – depart in mid-year to only 75% of the first $130,000 and 50% of the amount in excess of $130,000 of the full annual bonus.

3. This "75%-50%" formula used by defendants was not applicable to plaintiff. That formula is properly applied only to employees who depart after April 15 but well before the end of the calendar year. It implements the understandable principle that an employee who departs before mid-April is entitled to no annual bonus, and that an employee who stays beyond mid-April but departs in mid-summer or early fall has not earned the full annual bonus customarily paid by the Deutsche Bank Group to those employees who do work the full calendar year.

4. Plaintiff, on the other hand, was not given notice of termination until December 17, 2004, and was asked to and did continue faithfully to serve as Managing Director until the effective date of his termination – January 28, 2005. Having worked for defendants for the full twelve months of calendar 2004, plus an additional 28 days into 2005, plaintiff had fully earned and is entitled to the full 2004 bonus and other compensation he would

have received had he not been terminated.

     5. On information and belief, the 2004 bonus pool established by defendants and paid to members of plaintiff's group, who worked under him the entire year, was 112% of the 2003 bonus pool. Plaintiff, by contrast, having worked the same twelve months, was offered only 53.25% of his 2003 bonus. As the senior member of his group, he fully earned and is lawfully entitled to *at least* 112% of his 2003 bonus of $1,000,000 – that is, to a 2004 bonus of at least $1,120,000, compared to the $532,500 bonus proposed but not yet paid by defendants.

     6. By insisting on applying the inapplicable "75%-50%" formula to plaintiff, who worked all twelve months of calendar 2004, defendants misread and misapplied the Severance Plan and denied him the full bonus he earned by working the entire calendar year, thereby violating plaintiff's rights under 29 U.S.C. Section 1000 *et seq*. (the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), as well his rights of implied contract and quantum meruit under New York law.

     7. Plaintiff timely exercised his protest rights under the Severance Plan. His formal written request for review of the settlement and severance package proposed by defendants on December 17, 2004, was served on January 6, and was denied by the Severance Plan Oversight Committee of defendant Deutsche Bank Americas Holding Corporation on March 21. His formal written appeal from that decision was served on April 15, and was denied by the Oversight Committee and Deutsche Bank AG New York

4

on June 13, 2005.

## Jurisdiction and venue

8.  Federal subject matter jurisdiction is conferred over plaintiff's diversity of citizenship and federal question claims by 28 U.S.C. Sections 1331, 1332 and by 29 U.S.C. Section 1132(e). To the extent necessary, supplemental federal jurisdiction over plaintiff's pendant state law claims is conferred by 28 U.S.C. Section 1367.

9.  Venue in this district is proper under 28 U.S.C. Sections 1391(b) and (c) and by 29 U.S.C. Section 1132(e)(2), because a substantial portion of the events or omissions giving rise to plaintiff's claims occurred in this district, because the defendant corporations either reside in this district or are deemed to reside in this district because their conduct subjects them to personal jurisdiction here, and because the severance plan is administered here.

## The Parties

10.  The plaintiff is Joseph F. DeSantis, a citizen of New Jersey residing at 7 Baltimore Boulevard, Sea Girt, New Jersey 08750. For the four years immediately preceding January 28, 2005, he was employed as Managing Director of Equities, Americas, for Deutsche Asset Management ("Asset Management"), the marketing name used by his actual employer defendant Deutsche Bank Trust Company Americas ("DBCTA"). a member of the Deutsche Bank Group of companies. In that role, he

5

managed and led a department of approximately 90 men and women responsible for over $45 billion in equity mutual fund and institutional assets.  He is an intended beneficiary of defendants' Severance Plan.  Prior to joining defendants in October of 2000, plaintiff was Managing Director and Chief Investment Officer of Chase Trust Bank in Tokyo, Japan.

11.  The defendants, each of which is engaged in an industry affecting commerce, are all citizens of a state other than New Jersey:

a.  Deutsche Bank Trust Company Americas ("DBCTA") is a New York state chartered bank and corporate member of the so-called Deutsche Bank Group and is headquartered at 60 Wall Street here in Manhattan.  It was plaintiff's corporate employer within the Deutsche Bank Group.  Like other members of the Group, in the United States DBCTA used the marketing name "Deutsche Asset Management" for its assets management activities.

b.  Deutsche Bank Americas Holding Corp. is another corporate member of the so-called Deutsche Bank Group and is headquartered at 60 Wall Street here in Manhattan.  It was and is the entity which administers the Deutsche Bank Americas Severance Pay Plan for members of the Deutsche Bank Group.

c.  Deutsche Bank AG New York is another corporate member of the so-called Deutsche Bank Group and is headquartered at 60 Wall Street here in Manhattan.  It participated in the denials of plaintiff's original protest and of his appeal from that protest.

**Facts**

12. From October 2000 through January 28, 2005, plaintiff served as Managing Director of Equities, Americas, for defendant DBCTA and Asset Management. In that role, he headed their active equity investment staff based throughout the Americas. During 2004, plaintiff's group consisted of approximately 90 men and women, responsible for over $45 billion in assets.

13. In addition, plaintiff also co-chaired DBCTA's and Asset Management's Anti-Market Timing Working Group and was a member of their Americas Investment Committee, their Americas Investment Management team, their Brokerage Practices Working Group and their Pricing and Valuation Committees.

14. On December 17, 2004, plaintiff was informed that his position was being eliminated as the result of a corporate restructuring, with termination to be effective on January 28, 2005, denoted as his "Separation Date." Plaintiff was expected to, and did, continue to fulfill his obligations as Managing Director during the first four weeks of 2005, until and including his Separation Date of January 28, 2005.

15. The December 17, 2004 notice (appended hereto as Exhibit 1) asked plaintiff to sign a settlement agreement and to accept a severance package which proposed, among other things, a severance payment of $555,576.92. That proposed payment included two components. The first, $23,076.92, represented 4 weeks unpaid salary. The second,

7

$532,500, based on 53.25% of his 2003 bonus, was that portion of his bonus or "incentive compensation" for calendar 2004 which was offered to him under the "75%-50%" formula not properly applicable to him.  Plaintiff was given 21 days to consider whether to accept the package, and was referred to the Deutsche Bank Americas Severance Pay Plan, amended as of December 9, 2004, for an explanation of his rights, which included the right to file a written protest within 60 days.

16. On January 6, 2005, plaintiff served his written request for review of the severance package upon the Severance Plan Oversight Committee at defendant Deutsche Bank Americas Holding Corp.  Among other things, his request (Exhibit 2 hereto) argued that in calculating the amount of the bonus for calendar 2004 to which he was entitled, the defendants had incorrectly applied Section 1b of the Severance Pay Plan which

> was clearly intended to apply only to employees who leave the company after April 1, but well before the end of the year.  Those limitations should not be, and cannot fairly be, applied to individuals like me who work the entire calendar year, and are not terminated until early in the following year – just days before the bonus payment date.  Given my circumstances, I am entitled to my full 2004 bonus which . . . should be commensurate with my 2003 bonus and consistent with the increased bonus pool scheduled to be paid to my subordinates.

17. On March 21, 2005, on the stationery of defendant Deutsche Bank AG New York, defendants denied plaintiff's protest.  They expressly relied on Section 1.b of the Severance Plan and its "75%-50%" formula for calculating bonuses to be paid to certain departing employees.  (Exhibit 3 hereto)

18. By letter dated April 15, 2005, plaintiff exercised his right to appeal the March

21 determination.  His letter (Exhibit 4 hereto) pointed out that the Oversight Committee had simply ignored his argument that the "75%-50%" formula did not apply to someone like him who had not departed in mid-year, but had worked the full calendar year and, indeed, into the following year – departing only days before distribution of bonuses for the previous calendar year's work.

     19.  On June 13, 2005, again on the stationery of defendant Deutsche Bank AG New York, defendants denied plaintiff's April 15 appeal.  Their letter (Exhibit 5 hereto) once again cited Section 1.b of the Severance Plan, made clear that they had applied the "75%-50%" formula, and now interpreted it to apply to any employee who departs "before Incentive Compensation is next paid."  Because plaintiff worked until January 28, 2005, and Incentive Compensation for calendar 2004 was not paid until a few days later, he was – according to defendants – not entitled to his full bonus, but only to the amount calculated according to the "75%-50%" formula.  Defendants' letter invited plaintiff "to bring a court action concerning your claim."

     20.  In information and belief, the 2004 bonus pool established by defendants to reward the approximately 90 men and women whom plaintiff had managed in 2004 allowed payments on the average of 112% of their 2003 bonuses.

     21.  By contrast, defendants' wrongful application of the "75%-50%" formula to plaintiff awarded him only 53 1/4% of his 2003 bonus.  The bonus for calendar 2004 proposed but not yet paid under that formula – $532,500 –  is substantially less than 112%

of his 2003 bonus, which was $1,000,000.. His bonus for calendar 2004 should have been at least $1,120,000.

## Count I (ERISA)

22. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 21 as though fully set forth herein.

23. Defendants' actions and omissions as previously alleged violate plaintiff's claim for unpaid severance under the ERISA statute, 29 U.S.C. Section 1000 *et seq.*

24. In particular, by limiting plaintiff's bonus for calendar 2004 by misapplication of the "75%-50%" formula not properly applicable to employees, like plaintiff, who work the full calendar year and even into the following year, and who are terminated only days before such bonuses are distributed to other employees, defendants violated plaintiff's rights under ERISA.

25. For the reasons previously stated, defendants have damaged plaintiff by an amount equal to the full bonus for calendar 2004 to which plaintiff is entitled – an amount to be determined, but in no event less than $1,120.000, plus interest from the date in February 2005 on which the 2004 bonus should have been paid. He is also entitled to the other components of the proposed severance plan, including $23,076.92 representing four weeks salary promised but not paid pending resolution of plaintiff's protest and appeal., plus interest on that amount.

### Count II (Implied Contract)

26. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25 as though fully set forth herein.

27. As is customary in the financial industry, defendants have a long-established practice and policy, reflected in their Severance Pay Plan, of awarding substantial annual bonuses – typically equal to or larger than annual salaries – to those employees who work a full calendar year.

28. In his decision to join defendants' work force and to remain in their employee for full calendar years, plaintiff justifiably relied on the existence of defendants' long-established bonus practice and policy.

29. Having remained in defendants' employ not only throughout calendar 2004 but also through the first four weeks of January 2005, plaintiff had every right to expect that he would receive his full bonus for calendar 2004, consistent with the amounts paid to the approximately 90 men and women he managed that year – which was 112% of their 2003 bonuses.

30. Given plaintiff's four years as a senior executive of defendants and his familiarity with their long-established bonus policy, plaintiff had an implied right of contract to receive a full bonus for calendar 2004 provided that he remain in defendants' employ the entire calendar year. He did so, and was entitled, as a matter of implied contract, to a full 2004 bonus.

31. By refusing to pay plaintiff the full 2004 bonus he had earned by working the entire calendar year, and wholly apart from their obligations under the Severance Pay Plan, defendants violated plaintiff's implied contractual rights, and are liable to him for a bonus in an amount no less than $1,120,000, plus interest from the date in early February 2005 when the bonus should have been paid, as well as the $23,076.92 in unpaid salary which defendants agreed was due to him on account of his services to them.

### Count III (Quantum Meruit)

32. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31 as though fully set forth herein.

33. Defendants terminated plaintiff's employment as of January 28, 2005 – just days before it distributed full 2004 bonuses to employees – like plaintiff – who worked the entire calendar year.

34. Plaintiff worked in defendants' employ the entire 2004 calendar year, and through the first four weeks of 2005.

35. During calendar 2004 plaintiff provided his personal services to defendants in good faith.

36. Those services were beneficial to and accepted by defendants.

37. Plaintiff was entitled to full compensation for those services, including the substantial annual bonus which defendants and other investment banks and asset management companies customarily pay to such employees in addition to regular salaries,

which annual bonuses defendants had previously paid to plaintiff and his subordinates, and which they in fact paid to plaintiff's subordinates as compensation for their services during calendar 2004.

38.  It was and remains the common policy and practice of defendants, a fact well known to plaintiff, to pay such substantial bonuses in addition to regular salaries.

39.  But defendants have not paid such a full annual bonus to plaintiff.

40.  Wholly apart from his rights under defendants' Severance Pay Plan, plaintiff is, therefore, entitled to quantum meruit, the reasonable value of the services he rendered to defendants during calendar 2004, which value includes not only the regular salary paid to him but a full and fair annual bonus consistent with the annual bonuses paid to his subordinates for the same period – which averaged 112% of the bonuses paid to them (and to plaintiff) for calendar 2003, or at least $1,120,000., plus interest from the date on which the bonus for calendar 2004 should have been paid, as well as the $23,076.92 in unpaid salary which defendants agreed was due to him on account of his services to them.

**Prayer for Relief**

**Wherefore,** plaintiff prays that this Court enter judgment against the defendants, jointly and severally, as follows:

1.  Under Counts I, II and III, judgment against the defendants in an amount consistent with the bonuses paid to plaintiff's subordinates for calendar 2004, but in no event less than 112% of the bonus he had received for calendar 2003, plus interest on that

amount from the date in February 2005 on which the bonus for calendar 2004 should have been paid.

 2.  Under Counts I, II and III, judgment against the defendants for the additional amount of $23,076.92, representing four weeks of salary promised but not yet paid to him, plus interest on that amount from the date on which that amount should have been paid.

 3.  Reasonable attorneys fees and costs, as provided in 29 U.S.C. Section 1132(g).

 4.  Anything else to which the Court may deem plaintiff entitled.


New York, NY
December 29, 2005

             Daniel P. Levitt (DL6020)
             551 Fifth Avenue, Ste 1922
             New York, NY 10176
             (212)-687-3455
              *Counsel for plaintiff*